### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TOM & JERRY, INC., ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION |
| ) | |
| v. ) | No. 24-2254-KHV |
| ) | |
| MULLIS BUSINESS TECHNOLOGIES, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### MEMORANDUM AND ORDER

On May 10, 2024, in the District Court of Wyandotte County, Kansas, plaintiff filed suit against defendant seeking a declaratory judgment. On June 14, 2024, defendant removed the case to federal court based on diversity jurisdiction. See Defendant Mullis Business Technologies, LLC's Notice Of Removal (Doc. #1). This matter comes before the Court on Plaintiff's Motion To Remand (Doc. #13) filed July 12, 2024. For reasons stated below, the Court sustains plaintiff's motion.

### Legal Standard

Federal courts have limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so. Marcus v. Kan. Dep't of Revenue, 170 F.3d 1305, 1309 (10th Cir. 1999). Therefore, the law imposes a presumption against jurisdiction. Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). For the Court to have subject matter jurisdiction under 28 U.S.C. § 1332, complete diversity must exist between plaintiff and defendant, and the matter in controversy must exceed the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a); Middleton v. Stephenson, 749 F.3d 1197, 1200 (10th Cir. 2014). Defendant may remove the case to federal court only if plaintiff could have originally brought the action in

federal court.  See 28 U.S.C. § 1441(a).  The Court is required to remand "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c).

The Court evaluates the propriety of removal from state court based on the complaint at the time of removal.  Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1488–89 (10th Cir. 1991).  As the party asserting jurisdiction, defendant bears the burden of proving jurisdiction exists and must allege "a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), including "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  Dart Cherokee Basin Operating Co. v. Owens, 574 U.S 81, 89 (2014).  Where plaintiff contests defendant's allegations regarding the amount in controversy, both sides may present evidence and the Court must decide by a preponderance of the evidence whether defendant has satisfied the amount-in-controversy requirement.  See id. at 88.

Plaintiff's motion to remand is premised upon its view that defendant had failed to "plausibly allege" that the case might be worth more than $75,000.  Plaintiff states that if the Court allows defendant to submit evidence, plaintiff will challenge such evidence and demonstrate that the amount in controversy does not exceed $75,000.

Both sides have presented evidence on the amount in controversy, so the Court does not decide the motion to remand based solely on the pleadings—although it would reach the same conclusion, for slightly different reasons, on the pleadings alone.

## Factual Background

### I. Plaintiff's Complaint

Plaintiff's Petition For Declaratory Judgment (Doc. #1-1) filed June 14, 2024, (hereinafter the "complaint") alleges as follows:

On May 16, 2017, Tom & Jerry, Inc. (a Kansas corporation) and Mullis Business Technologies, LLC (a Colorado limited liability company) entered into a services agreement under which defendant would help plaintiff win government contracts for audiovisual services.[1] Petition (Doc. #1-1), ¶ 12.  Under the agreement, plaintiff agreed to pay defendant (1) 15 per cent of profits on any equipment sales for solicitations which defendant brought to plaintiff; (2) six per cent of profits on any equipment sales for solicitations which plaintiff gave to defendant; and (3) three per cent of total profits from solicitations which defendant wrote that did not contain equipment sales.

Robert Mullis is the sole member of Mullis Business Technologies, LLC.  In March of 2020, in a separate agreement, plaintiff hired Mullis to help manage plaintiff's corporate security program.  Between October of 2020 and June of 2022, plaintiff paid the LLC more than $820,000, which included personal compensation for Mullis.

On June 15, 2022, Mullis resigned his employment, and the LLC terminated its agreement with plaintiff.  Even though the LLC no longer performed services for plaintiff, it is entitled to compensation for ongoing government contracts.  It demands amounts that far exceed the scope of the agreement.[2]

In October of 2023, defendant submitted Invoice Two related to the so-called MARFORRES project.  Invoice Two sought (1) 50 per cent of plaintiff's total profits for the base year; and (2) three per cent of plaintiff's total profits for Option Years One and Two.  The invoice did not include dollar figures—it stated that the total amount sought was "TBD."  Plaintiff alleges

---

[1] In the complaint, the parties quote the agreement, but neither party has attached a copy of the agreement to any pleading.  Similarly, neither party has submitted documents which purport to justify their damage calculations or allegations regarding the amount in controversy.

[2] The complaint does not specifically state the amount that defendant is seeking.

that the MARFORRES project involves equipment sales, and that plaintiff (not defendant) identified this business opportunity, so defendant is only entitled to six per cent of profit on equipment sales—rather than three per cent of total profit. Plaintiff alleges that it does not owe defendant anything, however, because it paid defendant 50 per cent of total profit as a bonus for the base year, which was hundreds of thousands of dollars more than it owed defendant under the agreement.[3]

Invoice Three sought compensation of 15 per cent of profit on equipment sales related to the so-called MARFORSOUTH project. Like Invoice Two, Invoice Three did not demand a specific dollar figure; it stated that the total amount was "TBD." Plaintiff alleges that it (not defendant) identified this business opportunity, so defendant is only entitled to six per cent of profit on equipment sales, which totals $1,176.92.

As noted, the complaint does not allege the amount of profits which plaintiff received on either project or set forth relevant calculations of payments. Plaintiff merely alleges that it owes no further compensation for the MARFORRES project, and only owes $1,176.92 on the MARFORSOUTH project.

Plaintiff holds a Facility Security Clearance ("FCL") under the National Industrial Security Program, which is administered by the Defense Counterintelligence and Security Agency. An FCL is required for government contractors to bid on solicitations that involve access to classified information during contract performance. Without an FCL, plaintiff cannot maintain existing

---

[3] Defendant does not dispute that plaintiff paid it 50 per cent of total profit for the base year, but defendant disputes that it was a "bonus." Defendant claims that plaintiff owes 50 per cent of total profit for all three years under the employment agreement. This position is not consistent with Invoice Two, which demanded only 15 per cent of total profit for the base year and three per cent of total profit for Option Years One and Two.

contracts that involve access to classified information—including the contracts that are the subject of this dispute—or bid on such solicitations in the future.

In March of 2024, defendant mailed to plaintiff Amended Invoices Two and Three. The Amended Invoices demanded the same unquantified categories of payment but also threatened to report the overdue invoices under the Security Executive Agent Directive 3 ("SecEA Directive"), and possibly cause plaintiff to lose its national security eligibility.

## II.     Allegations In Notice Of Removal And Counterclaim

Defendant's notice of removal alleges that plaintiff seeks injunctive relief that could exceed a valuation of $75,000, and that hundreds of thousands of dollars of debts and compensation are at issue.  See Notice Of Removal (Doc. #1).  In support, defendant states that plaintiff paid the LLC more than $820,000 between October of 2020 and June of 2022.  Defendant does not show how these past payments are relevant to the current amount in controversy or specifically state the amount that it is seeking.

Defendant has filed a counterclaim for breach of contract, unjust enrichment and promissory estoppel, which alleges that plaintiff agreed to pay the LLC 50 per cent of its total profits and that it has been harmed—and that plaintiff has wrongly benefitted—in an amount which exceeds hundreds of thousands of dollars.  The counterclaim, however, omits any reference to a specific amount in controversy and does not allege a dollar figure that defendant is seeking.  See Answer And Affirmative And Other Defenses To Plaintiff's Petition For Declaratory Judgment And Counterclaims (Doc. #10) filed July 5, 2024.

## III.    Affidavits Submitted By The Parties

The parties have presented evidence relating to the amount in controversy:

Defendant submits the declaration of Robert Mullis, which states that plaintiff asked the

LLC to lead its audiovisual business line, orally offering to split the total profits 50-50 between plaintiff and defendant.  See Declaration Of Robert Mullis (Doc. #17-1) filed August 2, 2024. Mullis agreed, and between October of 2020 and June of 2022, plaintiff paid the LLC more than $400,000 relating to audiovisual work.

Mullis states that Invoices Two and Three are subject to the 50-50 profit-sharing agreement, and defendant believes its 50 per cent share of total profit exceeds $300,000 because the unpaid contract values are equivalent to the contract values that resulted in previously paid profit distributions of more than $400,000.[4]  Mullis admits, however, that in an effort to "compromise and simply finish any dealings" (including Invoices Two and Three, plus his compensation and invoices for four future contracts), defendant offered to settle the disputes at a "very steep discount" for $35,000.  Id., ¶ 17.

Plaintiff submits the declaration of its president, Tom Houlehan, which states that plaintiff realized approximately $737,950 in total profit for the base year of the MARFORRES project (Invoice Two), and paid defendant $368,975 (50 per cent of base year profits) as a bonus.  See Tom Houlehan Declaration (Doc. #20-1) filed August 16, 2024.  Houlehan states that on the MARFORRES project, plaintiff realized $46,368.73 in profits in Option Year One and $43,470.57 in profits in Option Year Two, and that for the MARFORSOUTH project (Invoice Three), plaintiff realized $19,615.36 in profits on equipment sales.[5]  Since plaintiff already paid defendant 50 per

---

[4]   Defendant apparently assumes that plaintiff's profit on the two projects at issue is comparable to plaintiff's profit on previous projects that resulted in payments to defendant of more than $400,000.

[5]   In its Reply In Support Of Motion To Remand (Doc. #20) filed August 16, 2024, plaintiff states that it realized a total profit of $19,615.36 for the MARFORSOUTH project.  It is therefore unclear whether the $19,615.36 is the total profit on equipment sales, the overall total profit or both for the MARFORSOUTH project (Invoice Three).

cent of its total profit for the base year of the MARFORRES project,[6] the parties only dispute $109,454.66 in total profit for the two invoices.[7]  Because 50 per cent of $109,454.66 is $54,727.33, plaintiff asserts that is the maximum amount in controversy.[8]

## **Analysis**

Plaintiff requests a declaratory judgment that (1) it does not owe defendant further compensation based on total profit on the MARFORRES project (Invoice Two);[9] (2) plaintiff only owes defendant $1,176.93 (six per cent of the $19,615.36 profit) on equipment sales for the MARFORSOUTH project (Invoice Three); and (3) the disputed amounts in Invoices Two and Three are not "debts" for purposes of the SecEA Directive.  Defendant removed the case to federal court based on diversity jurisdiction.

Plaintiff argues that the Court should remand this matter to state court because the amount in controversy is less than $75,000.  Because plaintiff contests defendant's allegation of the amount in controversy, the Court considers whether defendant has proven by a preponderance of the

---

[6]   The parties dispute whether the 50 per cent payment was a bonus to the LLC or was payable under Mullis' oral employment agreement with plaintiff.  Defendant claims that under the employment agreement, plaintiff agreed to pay the LLC 50 per cent of total profit.

[7]   Plaintiff's profit for Option Year One of the MARFORRES contract ($46,368.73), plus plaintiff's profit for Option Year Two of the MARFORRES contract ($43,470.57), plus plaintiff's profit for the MARFORSOUTH project ($19,615.36) equals $109,454.66.

[8]   The parties dispute whether plaintiff owes defendant six percent of profit on equipment sales or 50 per cent of total profit, so plaintiff is showing the calculation of 50 per cent of total profit, which is the maximum amount at stake.

[9]   For the MARFORRES project, plaintiff alleges it owes defendant no further compensation.  Plaintiff paid defendant a "bonus of $368,975"—50 per cent of overall profit for the base year—which greatly exceeds what plaintiff believes it owes defendant—six per cent of profit on equipment sales for the project.

evidence that the amount in controversy requirement is satisfied.[10]  See Dart, 574 U.S. at 88. Defendant may prove jurisdictional facts by contentions, interrogatories or admissions in state court, calculations from the complaint, reference to plaintiff's informal estimates or settlement demands, affidavits from experts or any other way.  McPhail v. Deere & Co., 529 F.3d 947, 954 (10th Cir. 2008).

The invoices do not show that defendant is seeking any specific dollar amount.[11]  Mullis states that (1) defendant is entitled to 50 per cent of the total profits on the MARFORRES and MARFORSOUTH projects, and (2) he "reasonably believes [defendant's] 50 percent share of the profits at issue exceeds $300,000, if not much more, as the unpaid contract values are equivalent to the contract values that resulted in the previously paid profit distributions" that exceeded $400,000.  Declaration Of Robert Mullis (Doc. #17-1), ¶ 16.  Mullis, however, does not credibly explain his belief that plaintiff owes defendant more than $300,000.  Defendant made a settlement offer of $35,000, which would be irrational if it had a good faith belief that it was entitled to hundreds of thousands of dollars.  This settlement offer included money items for which plaintiff does not seek a declaratory judgment, such as payments under the employment agreement and future payments under four additional contracts: AT&T, MFR SATOC, NASA PIKES and AFRC YRRP.  Accordingly, it appears that defendant's estimate of $300,000 also includes money items that are not at issue here.

On the other hand, plaintiff has provided evidence that the amount which defendant claims

---

[10]  Because plaintiff challenged defendant's allegation and defendant failed to prove by a preponderance of the evidence that the amount in controversy requirement is met, the Court need not address whether the defendant plausibly alleged the amount in controversy.

[11]  Likewise, defendant's allegations in its counterclaim and notice of removal do not allege the amount it is seeking.

on the two invoices at issue—50 per cent of plaintiff's total profits—is less than $55,000. Tom Houlehan Declaration (Doc. #20-1), ¶¶ 10, 14. Plaintiff states that it earned profits of $89,839.30[12] on Invoice Two and $19,615.36 on Invoice Three, for a total of $109,454.66. Even if defendant is entitled to 50 per cent of overall profits, defendant would only be entitled to $54,727.33.

Defendant provides no evidence which disputes Houlenan's calculation. The Court recognizes that plaintiff attached Houlehan's affidavit to its reply brief. Even so, defendant has not sought leave to file a surreply to dispute the accuracy of the calculations. Moreover, even if the Court disregarded Houlehan's affidavit, defendant has not met its burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000.

Based on the current record, defendant's theory of jurisdiction is not plausible or supported by evidence. The invoices in question did not claim a 50-50 split in overall profits on either project after the first year. Even if plaintiff paid defendant more than $820,000 in the 20 months before the invoices at issue, that number means nothing. For one thing, it does not distinguish salary to Mullis from amounts paid and/or payable to the LLC. Defendant has not submitted copies of the relevant contract or documents on which prior payments were based. Defendant does not explain "contract values that resulted in the previously paid profit distributions"—an omission which is quite telling in light of plaintiff's assertions that profits were front-loaded. Defendant does not dispute plaintiff's claim that it offered to settle all past and future disputes for $35,000. While not dispositive, this evidence, casts serious doubt on the credibility of defendant's position. It is far from clear from the face of the petition, or the evidence of record, that defendant's invoices are for

---

[12] For the MARFORRES project, only plaintiff's profits in Option Year One and Option Year Two are disputed, because plaintiff already paid defendant 50 per cent of its total profit for the base year.

payment of any 50-50 profit-sharing agreement.  The Court therefore sustains plaintiff's motion to remand.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand (Doc. #13) filed July 12, 2024, is **SUSTAINED**.  **The Court directs the Clerk to remand this case to the District Court of Wyandotte County, Kansas.**

Dated this 24th day of October, 2024 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge